UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LORRAINE SANDERLIN,

      Plaintiff,

v.                             Case No:  2:14-cv-484-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## OPINION AND ORDER

Plaintiff Lorraine Sanderlin appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability and Disability Insurance Benefits ("DIB").  For the reasons discussed herein, the decision of the Commissioner is affirmed.

### I.    Issues on Appeal

There are two overarching issues on appeal: (1) whether the Administrative Law Judge ("ALJ") properly determined the severity of Plaintiff's impairments; and (2) whether the ALJ was required to elicit testimony from a Vocational Expert ("VE").

### II.    Procedural History and Summary of the ALJ's Decision

On August 25, 2010, Plaintiff filed an application for a period of disability and DIB, alleging she became disabled and unable to work on August 1, 2006.  Tr. 108-11.  The Social Security Administration ("SSA") denied her claim initially on December 16, 2010 and upon reconsideration on March 29, 2011.  Tr. 70-72, 74-75. Plaintiff then requested and received a hearing before ALJ Larry J. Butler on August

29, 2012, during which she was represented by an attorney.   Tr. 77-78; Tr. 34-56. Plaintiff testified at the hearing.

On May 6, 2013, the ALJ issued a decision finding that Plaintiff is not disabled and denying her claim.   Tr. 13-21.   The ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011. Tr. 15.   At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from August 1, 2006, the alleged onset date ("AOD"), through the date last insured.   *Id.*   At step two, the ALJ determined that Plaintiff had the following severe impairment: emphysema/chronic obstructive pulmonary disease.   *Id.*   At step three, the ALJ concluded that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   Tr. 16.   The ALJ expressly considered whether Plaintiff met the requirements of Listing 3.02A.   *Id.*

Taking into account the effects from all of Plaintiff's impairments, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform unskilled light work in a clean air environment.   Tr. 17.   The ALJ found that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible.   Tr. 18.

The ALJ then found that Plaintiff was not capable of performing her past relevant work ("PRW") at a printing company bindery because the reported lifting requirements of that work exceed Plaintiff's RFC.   Tr. 20.   Using the Medical-

Vocational guidelines ("the Grids") as a framework, the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform.   Tr. 20-21.   Thus, the ALJ found that Plaintiff is not disabled and denied her claim.   Tr. 21.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on July 14, 2014.   Tr. 1-7, 8-9.   Accordingly, the ALJ's May 6, 2013 decision is the final decision of the Commissioner.   Plaintiff filed an appeal in this Court on August 21, 2014.   Doc. 1.

## III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. § 404.1520. The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.   *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. §

405(g).  Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."  *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

IV.   Discussion

a. *Whether the ALJ properly determined the severity of Plaintiff's impairments*

Plaintiff first argues that the ALJ erred by finding that her depression, anxiety, lupus and sleep apnea are non-severe, and that she only has mild limitation in the functional area of concentration, persistence, or pace.  Plaintiff also contends that the ALJ failed to evaluate whether her lupus meets or medically equals Listing

14.02.   The Commissioner asserts that Plaintiff failed to meet her burden to establish that these impairments are severe, and that she is disabled.

To constitute a "severe" impairment, the impairment or combination of impairments must significantly limit the claimant's physical or mental ability to do basic work activities.   20 C.F.R. § 404.1520(c).   "The claimant is responsible for providing medical evidence demonstrating an impairment and how severe the impairment is during the relevant time period."   *Castle v. Colvin*, 557 Fed. Appx. 849, 852 (11th Cir. 2014) (citing 20 C.F.R. § 404.1512(c)); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving he is disabled, and, consequently, he is responsible for producing evidence in support of his claim.").

Upon review of the entire record, the Court finds the ALJ properly determined that Plaintiff's mental impairments of depression and anxiety were nonsevere, because the record does not establish that they significantly limited her ability to perform basic work activities.   *See Wind v. Barnhart*, 133 Fed. Appx. 684, 690-91 (11th Cir. 2005) (finding the ALJ did not err in determining that plaintiff's obesity was not a severe impairment where there was no evidence it affected the plaintiff's ability to perform work activities).   The ALJ correctly evaluated Plaintiff's mental conditions according to the procedures set forth in the Regulations, and Plaintiff's reported daily activities lend further support to the ALJ's determination that Plaintiff can perform unskilled light work in a clean air environment.

The ALJ explained that he considered Plaintiff's medically determinable mental impairment of affective-mood disorder and found that it did not cause more than minimal limitation in her ability to perform basic mental work activities, and therefore was nonsevere.   Tr. 15.   Specifically, the ALJ discussed the "paragraph B" criteria and determined that Plaintiff had no more than mild limitation in any area. Tr. 15-16.   First, the ALJ found that Plaintiff only had mild limitation in activities of daily living, because on a September 6, 2010 Adult Function Report Plaintiff reported that she is able to care for herself and her pets, prepare simple meals, perform light cleaning, wash dishes and clothes, drive, shop for groceries, pay bills and manage her funds.   Tr. 16; Tr. 142-49.   In the area of social functioning, the ALJ also determined that Plaintiff only had mild limitation, because she reported that she was able to spend time with others and get along with authority figures and other people.   Tr. 16; Tr. 146-47.   In the area of concentration, persistence, or pace, the ALJ also found that Plaintiff had mild limitation, stating that during a consultative examination in November 2010 Plaintiff reported that she read books, which the ALJ noted "requires concentration maintenance."   Tr. 16; Tr. 454. Finally, the ALJ found that Plaintiff had no episodes of decompensation of an extended duration.   Tr. 16.

In making his determination that Plaintiff's mental impairments cause no more than mild limitation, the ALJ noted that Plaintiff gets depressed only occasionally and was not receiving any mental health treatment, albeit due to financial constraints.   Tr. 17.   The ALJ found that the medical evidence established

that Plaintiff was able to mentally function.   Tr. 18.   The ALJ discussed office treatment records from Robert Pollack, M.D. dated September 22, 2010 and October 19, 2010, from whom Plaintiff sought treatment for a dependent personality disorder and major depression.   Tr. 19.   The ALJ acknowledged that Dr. Pollack found Plaintiff had a global assessment functioning ("GAF") score of 50, but noted Plaintiff's admission in September 2010 that she stopped taking her anti-depressant medication "suggested non-compliance and likely explained why the claimant's depression was not under control."   Tr. 19; Tr. 438.   Accordingly, the ALJ assigned reduced weight to Dr. Pollack's GAF score.   Tr. 19.   The ALJ also noted Dr. Pollack determined in October 2010 that Plaintiff's mood had stabilized, evidencing that Plaintiff's condition quickly improved with treatment.   *Id.*; Tr. 440.

The ALJ also discussed the consultative examination performed by Rebecca Ferrer, Psy.D., on November 29, 2010.   Tr. 19; Tr. 451-56.   Dr. Ferrer noted that Plaintiff reported feeling sad; exhibited crying spells; and expressed feelings of hopelessness, worthlessness, diminished self-esteem, psychomotor agitation and concentration/attention difficulties.   Tr. 452.   Dr. Ferrer observed that Plaintiff was tearful and depressed during the interview and described Plaintiff's mood as generally dysthymic, but also noted that Plaintiff's sensorium was clear during the evaluation and she was oriented to person, place and time.   Tr. 453.   Dr. Ferrer also found Plaintiff's thought processes were coherent and goal directed.   *Id.*

Dr. Ferrer also noted that Plaintiff's attention and concentration "seemed to be moderately impaired" and that it took Plaintiff "an exorbitant amount of time" to

process information.  *Id.*  Dr. Ferrer further found Plaintiff's recent and remote memory seemed to be mildly to moderately impaired, but her cognitive functioning was average, and her insight and judgment were fair.   Tr. 454.   Dr. Ferrer concluded that Plaintiff had a recurrent moderate major depressive disorder, a generalized anxiety disorder, panic attacks without agoraphobia and a GAF score of 52.   Tr. 455.   The ALJ determined that Dr. Ferrer's GAF score was entitled to little weight because it is inconsistent with her objective findings and Plaintiff's own function reports.   Tr. 20.   Dr. Ferrer also found that the "[r]esults of the present evaluation appear to be consistent with psychiatric problems, which interfere significantly with the claimant's ability to function on a daily basis."   Tr. 455.

The ALJ also concluded that the absence of agoraphobia suggested Plaintiff was capable of interacting socially, and Dr. Ferrer's notation that Plaintiff was able to dress, bathe and groom herself, do laundry, manage funds, drive and read a book was significant, because it indicated that Plaintiff was able to function and concentrate.   Tr. 19; Tr. 454.   The ALJ also noted that Dr. Ferrer found that Plaintiff had mostly clear and fluent speech, coherent and goal-directed thought processes, clear sensorium, intact orientation, average intelligence and fair insight and judgment, which the ALJ again concluded established that Plaintiff could function mentally.   Tr. 19-20; Tr. 454.

David L. Kirk, Ph.D., also reviewed Plaintiff's records and determined that she suffered from affective and anxiety related disorders, and a mental RFC assessment was necessary.   Tr. 502.   Accordingly, Dr. Kirk completed a mental RFC form on

March 11, 2011, in which he explained that there was no documented worsening at the reconsideration level, and evidence at the time of Plaintiff's initial application "did not support any significant mental problems or restrictions."   Tr. 501. Although Dr. Kirk noted that Plaintiff experienced mild to moderate emotional distress secondary to her physical condition, Dr. Kirk stated:

> The evidence of the file indicates that the claimant might have difficulty sustaining complex tasks over a prolonged period of time, but day today [sic] functionality and capacity to sustain simple repetitive tasks and moderately complex tasks is not significantly limited.

*Id.*

Another agency physician, Pauline Hightower, Psy.D., also completed a mental RFC evaluation based upon her finding that Plaintiff had affective and anxiety disorders.   Tr. 461-74.   Dr. Hightower found that Plaintiff suffered from major depressive disorder ("MDD"), moderate; and GAD.   Tr. 464, 466.   Dr. Hightower further found that Plaintiff had moderate difficulties maintaining concentration, persistence, or pace; and mild difficulties in maintaining social functioning.   Tr. 471. Despite acknowledging Plaintiff's moderate depression and anxiety, Dr. Hightower noted Plaintiff "is quite functional in her daily activities" and that her *physical* impairments prevent her from doing some activities she used to enjoy.   Tr. 473.   The ALJ explained that he gave mixed weight to the opinions of Dr. Kirk and Dr. Hightower, disability determination services (DDS) physicians, and found their opinions that Plaintiff had a severe mental impairment were entitled only to little weight, because they were inconsistent with the medical evidence in this regard.   Tr. 20.   The ALJ determined that the doctors' opinions that Plaintiff can perform simple

tasks were entitled to more weight, and accordingly limited Plaintiff to unskilled work.  *Id.*

With respect to her physical impairments, Plaintiff maintains the ALJ erred by failing to find that her lupus and sleep apnea are severe impairments.  In his opinion, the ALJ discusses Plaintiff's 2009 treatment for sleep apnea at Sleep Health Center of Bonita Springs.  Tr. 18; Tr. 281-91.  Following Plaintiff's initial visit to Sleep Health Center on March 10, 2009, the record reflects an impression of "severe obstructive sleep apnea."  Tr. 283.  Subsequent records also reflect similar diagnoses.  *See* Tr. 290 (February 25, 2009 impression of severe sleep apnea); Tr. 288 (similar diagnosis from March 11, 2009); Tr. 386, 423 (April 6, 2009 records of Timothy Keys, M.D., F.C.C.P, noting Plaintiff's recent diagnosis of severe obstructive sleep apnea and including an assessment of obstructive sleep apnea); Tr. 284 (May 12, 2009 record including an impression of severe sleep apnea); Tr. 491 (February 4, 2011 assessment of obstructive sleep apnea); Tr. 536 (November 29, 2011 assessment of obstructive sleep apnea).

The ALJ noted in his opinion that Plaintiff complained of breathing problems and sleep difficulty, among other ailments, but highlighted that Plaintiff achieved "a more normalized index of 4.5, with CPAP titration treatment."  Tr. 18; *see* Tr. 287. The ALJ determined that Plaintiff's improvement with treatment suggested that her sleep apnea was not severe.  Tr. 18.  Moreover, the ALJ noted that medical records reflect that Plaintiff smoked two packs of cigarettes per day, and had been smoking cigarettes for 35 years, which he found "likely caused, or at least exacerbated, the

claimant's pulmonary condition." *Id.* The discussed Plaintiff's October 23, 2010 pulmonary function test ("PFT") results, including her FEV1 scores of 1.34-1.68, but highlighted the notation in that record that Plaintiff expended only moderate, as opposed to maximal, effort. *Id.*; Tr. 447.

The ALJ also considered Plaintiff's 2011 treatment at Family Health Center of Southwest Florida for COPD, lupus and sleep apnea. *Id.* The ALJ noted that Plaintiff was advised to stop smoking, and that more recent physical evaluations revealed normal results, both physical and mental. *Id.* The ALJ highlighted that evaluations revealed a normal musculoskeletal system and back; normal gait, stance and balance; normal mood and affect; non-diminished breath sounds; and a regular heart rate and rhythm, with no signs of acute distress, wheezing, rhonchi, rales or crackles *Id.*; *see* Tr. 490-91. The ALJ found that "[t]hese objective physical observations indicated the claimant was essentially able to physically function, and buttress the [ALJ's] contention that the claimant is able to perform light work in a clear air environment." *Id.* Specifically with respect to Plaintiff's lupus, the ALJ discussed the treatment Plaintiff received from 2008-2012 by Fred Creech, M.D. Tr. 19. The ALJ noted that Plaintiff's lupus "basically caused only skin lesion manifestations," and that Dr. Creech merely prescribed medication or cream. *Id.* The ALJ concluded that Plaintiff's lupus was not severe based in part on the records showing that her condition improved with treatment, and because Dr. Creech's records failed to identify how severe her condition was. *Id.*

Plaintiff further contends that the ALJ was required to expressly evaluate whether her lupus met or medically equaled Listing 14.02, which states:

> 14.02 *Systemic lupus erythematosus.*    As described in 14.00D1.[1]    With:
>
> A. Involvement of two or more organs/body systems, with:
>
> 1. One of the organs/body systems involved to at least a moderate level of severity; and
>
> 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
>
> or
>
> B. Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
>
> 2. Limitation in maintaining social functioning.

---

[1] Section 14.00D1, which describes how SLE is documented and evaluated, states:

> a. *General.* Systemic lupus erythematosus (SLE) is a chronic inflammatory disease that can affect any organ or body system.  It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).  Major organ or body system involvement can include: Respiratory (pleuritic, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition ("lupus fog"), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis). Immunologically, there is an array of circulating serum auto-antibodies and pro- and anti-coagulant proteins that may occur in a highly variable pattern.
>
> b. *Documentation of SLE.* Generally, but not always, the medical evidence will show that your SLE satisfies the criteria in the current "Criteria for the Classification of Systemic Lupus Erythematosus" by the American College of Rheumatology found in the most recent edition of the Primer on the Rheumatic Diseases published by the Arthritis Foundation.

20 CFR Part 404, Subpart P, App. 1.

          3. Limitation in completing tasks in a timely manner due
          to deficiencies in concentration, persistence, or pace.

20 CFR Part 404, Subpart P, App. 1.

The burden of establishing that a claimant's impairments meet or equal a listing rests with the claimant, who must produce specific medical findings that satisfy all the criteria of a particular listing—here, Listing 14.02.   20 C.F.R. § 404.1520(a)(4).   Upon review of the record, Plaintiff failed to meet this burden.   To "meet" Listing 14.02, Plaintiff must show that she has been diagnosed with SLE and provide medical evidence that her condition meets all of the criteria of the Listing for the required duration.   *Wilson*, 284 F.3d at 1224; 20 C.F.R. § 404.1525.   To "equal" Listing 14.02, Plaintiff must produce evidence that her condition is equal in severity to the Listing.   *Wilson*, 284 F.3d at 1224; 20 C.F.R. § 404.1526(a).

Here, office treatment records from Family Health Centers of Southwest Florida completed by Dr. Vlatko Salopek include an assessment of SLE.   Tr. 528. However, as the Commissioner notes, in the same record Dr. Salopek also specifically states there was "no evidence of lupus."   Tr. 529.   Other doctors mention cutaneous or "o." lupus, but not SLE.   *See, e.g.*, Tr. 372, 379, 435-36, 557, 578.   Even assuming that Dr. Salopek's assessment was sufficient as a diagnosis of SLE, Plaintiff has not shown that she satisfies all the required criteria, such that she "meets" Listing 14.02, because she cannot show one or more body systems involved, with two constitutional symptoms, for the required duration, or repeated manifestations of SLE with at least two constitutional symptoms and marked limitation in one of the functional areas.

20 CFR Part 404, Subpart P, App. 1 § 14.02.   Nor has Plaintiff otherwise established that her condition equals the severity of the Listing.

Plaintiff alleges that the record sufficiently demonstrates the involvement of her skin, respiratory and cardiovascular systems to at least a moderate degree.   As the Commissioner notes, results of stress tests showed only mild effects, and other records showed that Plaintiff's hypertension was controlled with medication.   Tr. 534, 553-54; *see* Doc. 17 at 18, 19.   Plaintiff also has not established that she suffered from two constitutional symptoms for the requisite duration, which is twelve consecutive months.   20 C.F.R. § 404.1505(a), 404.1509, 404.1520(a)(4)(iii).   The record contains only one instance of "involuntary weight loss" and fever, and Plaintiff's reported daily activities are inconsistent with her experiencing "severe fatigue."   Tr. 279, 451.   Although Plaintiff reported some fatigue and an inability to perform certain daily and personal care activities, the ALJ found that Plaintiffs testimony and reports were not entirely credible.   Tr. 17-18.

Plaintiff bears the ultimate burden of proving that she is disabled and must furnish medical and other evidence to support such a finding.   42 U.S.C. § 423(d)(5)(a); 20 C.F.R. § 404.1512(a), (c).   Even though the ALJ was required to consider Plaintiff's mental and other impairments, Plaintiff failed to meet her burden of establishing that they affected her ability to perform basic work activities.   *See Castel*, 355 Fed. Appx. at 264; *see also Street*, 133 Fed. Appx. at 630-31.   Accordingly, Plaintiff did not satisfy her burden to prove that she had additional severe impairments or limitations beyond those found by the ALJ.   Moreover, as the

- 14 -

Commissioner argues, once the ALJ determined that Plaintiff had a severe impairment, that was sufficient to satisfy step two and proceed to step three of the sequential evaluation where the ALJ was required to consider Plaintiff's entire medical condition, including her nonsevere impairments. *Burgin v. Comm'r of Soc. Sec.*, 420 Fed. Appx. 901, 902 (11th Cir. 2001).

Here, the ALJ properly identified Plaintiff's severe impairments at step two in accordance with the Regulations, proceeded to step three and considered the extent to which all of Plaintiff's impairments affect her RFC, as required at step four. Contrary to Plaintiff's contentions that the ALJ failed to mention certain evidence, when making a disability determination the ALJ is not required to discuss every piece of evidence submitted in support of Plaintiff's claim. *Dyer*, 395 F.3d at 1211 ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the court] to conclude that [the ALJ] considered [the plaintiff's] medical condition as a whole.") (quotation marks omitted); *Griffin v. Comm'r of Soc. Sec.*, 560 Fed. Appx. 837, 843 (11th Cir. 2014) ("And while the ALJ's reference to that ailment was short, he was not required to refer to every piece of evidence."); *Cooper v. Comm'r of Soc. Sec.*, 521 Fed. Appx. 803, 808-09 (11th Cir. 2013) ("Despite Cooper's assertions to the contrary, the ALJ stated that he considered the record in its entirety, and he was not required to discuss every piece of evidence in denying her application for disability benefits.").

The ALJ then proceeded to step five, where he determined that Plaintiff is able to perform other work in the national economy, and therefore is not disabled.   Upon review of the record, the ALJ applied the proper legal standards, and his determination that Plaintiff could perform unskilled light work in a clean air environment is supported by substantial evidence.

### b.   Whether the ALJ was required to elicit testimony from a VE

Finally, Plaintiff argues that her nonexertional limitations necessitated consulting a VE to determine whether there are jobs in the national economy that she could perform.   Doc. 15 at 18.   The Commissioner argues that where, as here, the ALJ found that Plaintiff can perform the full range of light work, the ALJ may use the Grids as a framework for making his disability determination, and properly did so here to determine that Plaintiff is not disabled.   Doc. 17 at 20-22.

When the ALJ finds that an impairment does not meet or equal a listed impairment at step three, as in this case, the ALJ then will proceed to step four to assess and make a finding regarding the claimant's RFC based upon all the relevant medical and other evidence in the record.   Tr. 16; 20 C.F.R. § 404.1520(e).   After reviewing the evidence, the ALJ determined that Plaintiff had the RFC to perform unskilled light work, but in a clean air environment.   Tr. 17.   A limitation other than as to strength demands, such as to clean air environments only, is considered non-exertional and therefore the Grids do not direct a factual finding of disabled or not disabled.   20 C.F.R. § 404.1569a(a), (c).   Instead, the principles set forth in the grids must be *considered* when determining whether a claimant has a disability.   20

C.F.R. § 404.1569a(c)(2); *see Foote*, 67 F.3d at 1559 (ALJ must make finding whether nonexertional limitations are severe enough to preclude wide range of work at given level). If nonexertional limitations significantly impact a claimant's ability to perform a wide range of work-related activities at a given exertional level, the ALJ must elicit testimony from a VE. *See Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (where nonexertional impairments significantly limit basic work activities, ALJ should consult VE rather than relying solely on grids); *Vuxta v. Comm'r of Soc. Sec.*, 194 Fed. Appx. 874, 878 (11th Cir. 2006) (remanding for ALJ to determine whether plaintiff's limitations preclude wide range of work and, if so, stating ALJ must consult a VE rather than relying on grids); *Goberman v. Apfel*, No. 2:99-cv-316-FtM-26DNF, 2001 WL 267209, at *5 (M.D. Fla. Mar. 12, 2001) (explaining that when nonexertional limitations significantly erode the base of employment at a given level, consulting a VE is appropriate).

Here, the ALJ acknowledged that the Grids are to be used as a framework for determining whether a claimant is disabled. Tr. 21. The ALJ noted that if Plaintiff could perform the full range of light work, considering her age, education and work experience, the Grids would direct a finding of "not disabled." *Id.* Here, however, the ALJ imposed a nonexertional limitation: that Plaintiff only can work in a clean air environment. The ALJ then expressly found that "the additional limitations had little or no effect on the occupational base of unskilled light work." *Id.* Thus, the ALJ was not required to elicit testimony from a VE, and properly considered the principles set forth in the grids in reaching his determination that Plaintiff is not

disabled.   20 C.F.R. § 404.1569a(c)(2); *Syrock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985) (ALJ could rely on grids where his determination that nonexertional impairments did not preclude wide range of employment was supported by substantial evidence); *Heatly v. Comm'r of Soc. Sec.*, 382 Fed. Appx. 823, 826 (11th Cir. 2010) (ALJ properly relied on grids where plaintiff's nonexertional impairments did not significantly restrict capacity to perform work activities); *Clifton v. Astrue*, 298 Fed. Appx. 855, 856 (11th Cir. 2008) (ALJ properly relied on grids where claimant's mental limitations did not preclude full range of light work); *Perry v. Astrue*, 280 Fed. Appx. 887, 894, 896 (11th Cir. 2008) (VE testimony was not required where ALJ determined that plaintiff did not have nonexertional impairments that significantly limited his ability work, and substantial evidence supported the ALJ's decision); *Werner v. Comm'r of Soc. Sec.*, 421 Fed. Appx. 935, 939 (11th Cir. 2011) (ALJ's determination that plaintiffs nonexertional impairments did not significantly limit plaintiff's ability to work supported by substantial evidence, and ALJ therefore was free to rely on grids rather than VE); *Johnson v. Barnhart*, No. 02-16464, 2003 WL 22595220, at *6 (11th Cir. 2003) (ALJ could rely on grids and was not required to consult VE where the plaintiff's nonexertional limitations did not preclude wide range of sedentary work).

Plaintiff has not produced evidence that she would be unable to perform a wide range of light work in a clean air environment.   Because the ALJ determined that Plaintiff's nonexertional limitations do not significantly limit her ability to perform the range of light unskilled work, the ALJ properly could—and did—rely on the Grids

to determine that significant jobs existed in the national economy that Plaintiff could perform.   The ALJ's decision in this regard is supported by substantial evidence.

## V.   Conclusion

Upon review of the record, the undersigned concludes that the ALJ applied the proper legal standards, and his determination that Plaintiff is not disabled is supported by substantial evidence.   Where, as here, the Commissioner's decision is supported by substantial evidence, the Court must affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the preponderance of the evidence is against the Commissioner's decision.   *Edwards*, 937 F.2d at 584 n.3; *Barnes*, 932 F.2d at 1358.

ACCORDINGLY, it is hereby

**ORDERED:**

1.     The decision of the Commissioner is **AFFIRMED**.

2.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 10th day of June, 2015.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record